UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 25-30027-MGM |
| | ) | |
| v. | ) | Violation: |
| | ) | |
| | ) | Count One: Conspiracy to Commit Bank Fraud |
| CHRISTINE GENDRON | ) | (18 U.S.C. § 1349) |
| | ) | |
| Defendant | ) | Forfeiture Allegation: |
| | ) | (18 U.S.C. § 982(a)(2)) |
| | ) | |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      Defendant CHRISTINE GENDRON ("GENDRON") was a resident of Feeding Hills, Massachusetts, and a certified public accountant ("CPA").

2.      Coconspirator 1 ("CC-1") and Coconspirator 1 ("CC-2") were residents of Longmeadow, MA who resided at a property owned initially by GENDRON and CC-2 and later by GENDRON exclusively (the "Longmeadow Residence").

3.      CC-1 and CC-2 owned and operated numerous limited liability companies (the "Companies") through which they owned and leased commercial and residential property in Western Massachusetts, Connecticut, and elsewhere (the "Properties").

4.      CC-1, CC-2, and GENDRON conducted this real estate business through JLL Realty Developers, LLC ("JLLRD"), a company organized in Massachusetts with an office in

Initialed by Christine Gendron _____

1

Springfield, Massachusetts.   GENDRON was JLLRD's Financial Manager and self-described "resident CPA."

5.    The Financial Institutions were credit unions, the deposits of which were insured by the National Credit Union Share Insurance Fund, and mortgage lending businesses.

6.    The First Mortgage Broker and the Second Mortgage Broker (collectively, the "Mortgage Brokers") were companies that GENDRON, CC-1, and CC-2 used as conduits to provide financial information to the Financial Institutions.

<u>Overview of the Conspiracy and the Scheme to Defraud</u>

7.    Beginning on or about January 26, 2016 and continuing through at least May 12, 2021, GENDRON, CC-1, and CC-2 conspired with each other and others known and unknown to the United States Attorney to defraud the Financial Institutions and to obtain funds from the Financial Institutions by providing materially false financial information concerning the Companies and the Properties.

8.    This false financial information included:

a.    rent rolls that falsely stated the monthly rent payments and lease expiration dates of tenants in the Properties;

b.    lease agreements, lease extensions, and other tenancy records that falsely stated the monthly rent payments and lease expiration dates of tenants in the Properties and that contained forged signatures of the tenants;

Initialed by Christine Gendron _____

2

c.    profit and loss statements that falsely stated the Companies' rental income and overall profit; and

d.    personal financial statements and other documentation that falsely stated the assets and income of CC-1 and CC-2, who served as personal guarantors for many of the loans.

<u>Object and Purpose of the Conspiracy</u>

9.    The object of the conspiracy was to commit bank fraud by obtaining loans for the Companies and JLLRD based upon materially false financial information concerning the Companies and the Properties.  The principal purposes of the conspiracy and the scheme to defraud were:

a.    to make money for CC-1, CC-2, JLLRD, and the Companies;

b.    to conceal the scheme from the Financial Institutions and law enforcement authorities; and

c.    to shelter the Longmeadow Residence from the Financial Institutions.

<u>Manner and Means of the Conspiracy and Scheme to Defraud</u>

10.    Among the manner and means by which CC-1, CC-2, GENDRON, and coconspirators known and unknown to the United States Attorney carried out the conspiracy and the scheme to defraud were the following:

a.    creating false rent rolls, profit and loss statements, and other financial documentation that concealed the true financial condition of the Properties

Initialed by Christine Gendron _____

3

and the Companies;

b.  creating fictitious tenancy records, including lease agreements, lease extensions, tenant estoppel certificates, and subordination, disturbance, and non-attornment agreements ("SNDAs"), to support the false claims in the financial documentation;

c.  creating false personal financial statements and financial account records that inflated the assets and income of CC-1 and CC-2;

d.  providing the false financial documentation and fictitious tenancy records to the Mortgage Brokers and the Financial Institutions, including by email; and

e.  transferring the Longmeadow Residence to the sole ownership of GENDRON.

Acts in Furtherance of the Conspiracy and the Scheme to Defraud

11.  From on or about January 26, 2016 and continuing through at least May 12, 2021, CC-1, CC-2, GENDRON, and others known and unknown to the United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the conspiracy and the scheme to defraud:

12.  On or about January 26, 2016, GENDRON sent an email to the First Mortgage Broker, with a copy to CC-1, stating "Attached is the commercial lease" and attaching a fictitious lease agreement for a law firm at 34 Sumner Avenue, Springfield, MA.

Initialed by Christine Gendron _____

4

13.    On or about January 3, 2017, GENDRON sent an email to the First Mortgage Broker, CC-1, and CC-2, stating "Here are a bunch of leases" and attaching fictitious leases for three individual lawyers at 1145 Main Street, Springfield, MA ("1145 Main Street") and an individual at 115 State Street, Springfield, MA ("115 Main Street").

14.    On or about February 9, 2017, GENDRON sent an email to the First Mortgage Broker containing fictitious lease extensions for three tenants at 294 North Main Street, East Longmeadow, MA ("294 North Main Street").

15.    On or about June 29, 2017, CC-2 sent an email to the First Mortgage Broker, with a copy to CC-1, stating "we owe for both properties $1,740,700, we are looking for $2,200,000" and attaching a false rent roll for 79-89 Enfield Street, Enfield, CT ("79 Enfield Street").

16.    On or about March 9, 2018, CC-2 sent an email to one of the Financial Institutions, with copies to CC-1 and GENDRON, stating "CC-1 asked that I sent [sic] this over.   CC-1 owns the building out right [sic]. . . . We are looking for a line of credit for 400K" and attaching a false 2018 rent roll for 939 Columbus Avenue, Springfield MA ("939 Columbus Avenue").

17.    On or about April 8, 2018, CC-2 sent an email to the Second Mortgage Broker, with a copy to CC-1 and GENDRON, stating "Please see attached rent roll and annual expense" and attaching a false 2018 rent roll for 60 Shaker Road and 30-34 Shaker Road (formally known as 37 Prospect Road), both in East Longmeadow, MA (the "Shaker Road Properties").

18.    On or about July 13, 2018, GENDRON sent an email to the First Mortgage Broker stating "yes, you can send [one of the Financial Institutions] the ones you have on file," referring

Initialed by Christine Gendron _____

5

to a false rent roll and fictional leases for 294 North Main Street.

19.     On or about August 6, 2018, GENDRON sent an email to one of the Financial Institutions, with copies to CC-1 and CC-2, stating "CC-1 asked me to send you the current rent roll and financials for Longmeadow Park LLC.  He is looking for $11.5 to refi out of his current debt on the property" and attaching a false rent roll for 167-175 Dwight Road, Longmeadow, MA ("Longmeadow Park") and a false profit and loss statement for Longmeadow Park, LLC.

20.     On or about January 16, 2019, GENDRON sent an email to one of the Financial Institutions, with copies to CC-1 and CC-2, stating "Here are some.  More to follow" and attaching fictitious leases and lease extensions for attorneys at 1145 Main Street.

21.     On or about June 18, 2018, GENDRON and CC-2 executed a QuitClaim Deed that transferred the Longmeadow Residence entirely to GENDRON for one dollar.

22.     On May 12, 2021, during a voluntary interview at her residence with Special Agents of the Federal Bureau of Investigation, GENDRON falsely stated that she was unaware of any fraudulently obtained loans and that it would surprise her that CC-1 and CC-2 would submit fraudulent documents to the bank.

Initialed by Christine Gendron _____

6

<u>COUNT ONE</u>
Conspiracy to Commit Bank Fraud
(18 U.S.C. § 1349)

The United States Attorney alleges:

23.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-22 of this Information.

24.    From on or about January 26, 2016 and continuing through at least May 12, 2021, in the District of Massachusetts, and elsewhere, the defendant,

CHRISTINE GENDRON,

conspired with CC-1 and CC-2 to commit bank fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution, that is, the Financial Institutions, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of the Financial Institutions, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1349.

Initialed by Christine Gendron _____

7

## FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(2))

The United States Attorney further alleges:

34.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count One, the defendant,

### CHRISTINE GENDRON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property which constitutes or is derived from proceeds obtained directly or indirectly as a result of the offenses.   The property to be forfeited includes the following:

    a.  $392,607 in United States currency, to be entered in the form of a forfeiture money judgment.

35.     If any of the property described in Paragraph 34, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty;

Initialed by Christine Gendron _____

8

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

LEAH B. FOLEY
UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

STEVEN    Digitally signed by
          STEVEN BRESLOW
BRESLOW Date: 2025.04.05
          12:58:56 -04'00'

BY: _____

Steven H. Breslow
Assistant United States Attorney

Dated: April 5, 2025

Initialed by Christine Gendron _____

9