

U.S. Department of Justice

*Leah B. Foley*
United States Attorney
District of Massachusetts

Main Reception: (413) 785-0235

United States Courthouse
300 State Street, Suite 230
Springfield, Massachusetts 01105

April 5, 2025

David Hoose, Esq.
Strehorn, Ryan, & Hoose
100 Main Street 3rd Floor
Northampton, MA 01060
Counsel for Christine Gendron

    Re:    *United States v. Christine Gendron*
           Criminal No. 25-300   -MGM

Dear Counsel:

The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Christine Gendron ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    <u>Change of Plea</u>

No later than April 22, 2025 or as soon as practicable for the Court, Defendant will waive Indictment and plead guilty to Count One of the Information: Conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349.

Defendant admits that Defendant committed the crime specified in this count and is in fact guilty of it.

Defendant agrees to the accuracy of the attached Statement of Facts.

The U.S. Attorney agrees not to charge Defendant with any other violations in connection with the Defendant's conduct set forth in the Statement of Facts.

Initialed by Christine Gendron: _CG_

1

2.  Penalties

Defendant faces the following maximum penalties: incarceration for thirty years; supervised release for three years; a fine of $1,000,000 or twice the gross gain or loss; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.  Sentencing Guidelines

The U.S. Attorney agrees, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 27:

    a) Defendant's base offense level is 7 because Defendant was convicted of an offense referenced to this guideline and that offense of conviction has a statutory maximum term of imprisonment of 20 years or more (USSG §2B1.1(a)(1));

    b) Defendant's offense level is increased by 20, because Defendant's offense involved a loss between $9,500,000 and $25,000,000 (USSG §2B1.1(b)(1)(K));

    c) Defendant's offense level is increased by 2, because Defendant's offense involved 10 or more victims (USSG §2B1.1(b)(2)(A)(i);

    d) Defendant's offense level is increased by 2, because Defendant's offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG §2B1.1(b)(10)(C));

    e) Defendant's offense level is increased by 2, because Defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense (USSG §2B1.1(b)(17)(A));

    f) Defendant's offense level is increased by 2, because Defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation of the offense of conviction and the obstructive conduct related to the defendant's offense of conviction (USSG § 3C1.1);

Initialed by Christine Gendron _CG_

2

    g) Defendant's offense level is decreased by 3, because Defendant was between a minor and minimal participant in the criminal activity (USSG §3B1.2);

    h) Defendant's offense level is decreased by 2, because Defendant meets all of the criteria required for an adjustment for certain zero-point offenders (USSG §4C1.1(a)); and

    i) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1).

Defendant agrees with the U.S. Attorney's calculation but reserves the right to contest each of the two-level enhancements set forth in items (c) (ten or more victims), (d) (sophisticated means), and (g) (obstructing the administration of justice).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the U.S. Attorney will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

    4.    <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence to the Court:

    a) 45 months of incarceration;

    b) 36 months of supervised release;

Initialed by Christine Gendron _____

c) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

d) restitution of $392,607 pursuant to 18 U.S.C. § 3664(h); and

e) forfeiture as set forth in Paragraph 6.

Defendant agrees that the following victims are owed $19,305,473 in restitution as specified below,[1] except Defendant reserves the right to seek apportioned restitution pursuant to Title 18, United States Code, Section 3664(h) with the defendants in *United States v. Louis R. Masaschi and Jeannette Norman*, CR-23-30014-MGM:

| Lender | Amount |
|---|---|
| Security Mutual Life Insurance Co. ("SMLI") | $ 1,554,378 |
| New York Income Partners, LLC ("NYIP") (LOU-17-001) | $ 1,463,051 |
| Freedom Credit Union ("FCU") | $ 5,370,037 |
| NYIP (LOU-17-002) | $ 530,058 |
| NYIP (LOU-17-003) | $ 3,647,352 |
| U.S. Income Partners, LLC ("USIP") | $ 793,822 |
| Community Loan Servicing, LLC d/b/a Silver Hill Funding, LLC ("SHF") | $ 255,112 |
| SHF | $ 1,068,434 |
| Grand Coast Capital Fund I, LLC ("Grand Coast") | $ 300,115 |
| Grand Coast | $ 778,182 |

---

[1] Defendant agrees that this restitution is accurate and correct based upon the attached agreed-to Statement of Facts, but reserves the right to seek a reduction in restitution, as to the specific victims referenced above, at sentencing if Defendant can substantiate this reduction based upon documentary evidence that the Lender has recovered other assets or funds in connection with the loan that were applied to the corresponding restitution owing. Defendant agrees to provide such evidence to the Government no later than 60 days prior to sentencing to permit the Government the opportunity to present such evidence to the Lender and obtain the Lender's response. If any such reduction is permitted, the amount payable to each of the above-referenced victims would be reduced by the amount of the corresponding permissible reduction. Any entity or individual who made a payment resulting in such a reduction (other than Defendant), however, would be considered an additional victim that is owed restitution in the amount that such additional victim paid to the Lender on account of a restitution loss.

Initialed by Christine Gendron  *Cg*

4

| Lender | Amount |
|---|---|
| Grand Coast | $   561,005 |
| MCREIF SubREIT, LLC, d/b/a Money360 ("MCREIF") | $ 1,734,305 |
| Workers Credit Union ("WCU") | $ 2,043,444 |
| **Total:** | **$19,305,473** |

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5. <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

> a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and
>
> b) Defendant will not challenge any prison sentence of 45 months or less or any court orders relating to forfeiture, restitution, fines or supervised release. This provision is binding even if the Court's Guidelines analysis is different than the one in this Agreement.

The U.S. Attorney agrees that, regardless of how the Court calculates Defendant's sentence, the U.S. Attorney will not appeal any sentence of imprisonment of 45 months or more.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence (to the extent set forth in subparagraph (b), above) will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence (to the extent set forth in subparagraph (b), above), regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Initialed by Christine Gendron _CG_

5

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6. Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include the following:

   a. $392,607 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $392,607 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant obtained as a result of her offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crime to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed

Initialed by Christine Gendron _CG_

to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

Without limiting the above, Defendant states that Defendant is the sole and lawful owner of, and consents to forfeiture of, the following substitute asset:

  a. 166 Hillcrest Avenue, Longmeadow, Hampden County, MA (quitclaim deed at Book 22715, Page 196).

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

Provided the United States Attorney's Office can make the necessary representations as set for the Asset Forfeiture Policy Manual (2025), pursuant to 28 C.F.R. Part 9, the United States Attorney's Office for the District of Massachusetts agrees to submit a restoration request to the Money Laundering and Asset Recovery Section of the Department of Justice, seeking approval for approval for the net proceeds (after disposal and other costs) of any forfeited assets identified in this plea agreement to be restored back to the victims in this case, which may, in turn, satisfy in full or in part any restitution order. The Defendant acknowledges that the Attorney General, or his

Initialed by Christine Gendron _____

designee, has the sole discretion to approve or deny the restoration request.

7. <u>Civil Liability</u>

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8. <u>Breach of Plea Agreement</u>

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the U.S. Attorney during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*   *   *

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Steven H. Breslow.

Initialed by Christine Gendron _Cg_

Sincerely,

LEAH B. FOLEY
United States Attorney

By: Neil L. Desroches
Digitally signed by Neil L. Desroches
Date: 2025.04.22 12:11:20 -04'00'

NEIL L. DESROCHES
Chief, Springfield Branch Office

STEVEN BRESLOW
Digitally signed by STEVEN BRESLOW
Date: 2025.04.05 12:54:57 -04'00'

STEVEN H. BRESLOW
Assistant U.S. Attorney

Initialed by Christine Gendron _CG_

9

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the maximum penalties for this crime. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense. I believe this Agreement is in my best interest.

_____
Christine Gendron
Defendant

Date: 4-16-25

I certify that Christine Gendron has read this Agreement and that we have discussed what it means. I believe Christine Gendron understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
David Hoose, Esq.
Attorney for Defendant

Date: April 16, 2025

Initialed by Christine Gendron _CG_

10

*United States v. Louis R. Masaschi, et al.,* 23-CR-30014-MGM
*United States v. Christine Gendron,* 25-CR-300___-MGM
**Statement of Facts**
**March 25, 2025**

**Introduction**

1. The following facts are based primarily on: (1) records and statements provided by the commercial lenders and entities set forth below; (2) records and statements provided by the tenants set forth below; (3) emails sent and received by the defendants, including those obtained by search warrants.

2. Louis R. Masaschi ("Masaschi") and Jeannette Norman ("Norman")[1] were partners in dozens of limited liability companies ("LLCs") through which they developed commercial and residential real estate in Western Massachusetts, Connecticut, and elsewhere.

3. Masaschi and Norman conducted their business through JLL Realty Developers, LLC ("JLLRD"). Christine Gendron ("Gendron"), Norman's sister, was a certified public accountant who worked as JLLRD's Financial Manager and self-described "resident CPA." Masaschi was JLLRD's manager, Secretary of the Commonwealth ("SOC") signatory, and real property signatory. Masaschi, Norman, and Gendron were all authorized signatories on JLLRD's Berkshire Bank Account x-1010. From 2015 to 2022, Gendron received $392,607 in payments for her work at JLLRD.

4. Through JLLRD and other LLCs, Masaschi, Norman, and Gendron conspired to obtain loans from various financial institutions, including credit unions and mortgage lending businesses (the "Commercial Lenders"), by submitting materially false financial information for properties owned by businesses operated by Masaschi and Norman.

5. This false financial information included:

    a. false rent rolls (lists of tenants and their rental terms) that contained inflated monthly rental payments and lease expiration dates, thus overstating the amount of income for the properties;

    b. false profit and loss statements ("P&Ls") for the properties or their operating LLCs that similarly overstated the amount of income generated by the properties; and

    c. fictitious documents that supported the false rent rolls, such as lease

---

[1] According to a Small Business Loan application that Norman executed on November 2, 2017: (1) Norman graduated Northeastern University with a degree in criminal justice and hospitality management; (2) from 1998 to 2007, she worked as a vice president at Goldman Sachs, where she managed corporate dining, building facilities, and real estate leasing; and (3) since 2010, she was an owner of JLLRD.

1
Initialed by Christine Gendron ___*CG*___

agreements, tenant estoppel certificates, and subordination, non-disturbance, and attornment agreements ("SNDAs")[2] for tenants that similarly contained inflated monthly rental payments and lease expiration dates and that bore the signatures of Masaschi or Norman as well as the forged signatures of the tenants.

6. In some instances, Masaschi, Norman, and Gendron provided this false information directly to the commercial lenders. In other instances, Masaschi, Norman, and Gendron provided this false information through their mortgage brokers, including Northmarq Capital ("Northmarq"). Gendron generally acted at the direction of Masaschi.

7. Based upon this false information, the Commercial Lenders provided loans to companies owned by Masaschi and Norman, who often were required to serve as personal guarantors of the loans. Gendron did not own any of these companies, did not serve as a personal guarantor for any of these loans, and did not receive any proceeds of the loans (other than her regular salary at JLLRD).

8. After receiving these loans, Masaschi, Norman, and their companies made some or no payments and ultimately defaulted on the loans, causing substantial losses to the Commercial Lenders.

The loans issued by the Commercial Lenders included the following, with a total actual loss of **$19,305,473** and a total attempted loss of **$60,123,000.**

| Lender | Date | Loan | Collateral | Actual Loss |
|---|---|---|---|---|
| Security Mutual Life Insurance Co. ("Security Mutual") | 05-24-16 | $ 3,900,000 | 34 Sumner Avenue, Springfield, MA | $ 1,554,378 |
| New York Income Partners, LLC ("NYIP") (LOU-17-001) | 03-01-17 | $ 600,000 | Masaschi's and Norman's membership interested in 294 North Main Street, LLC and Summer Ave, LLC | $ 1,463,051 |
| Columbian Mutual Life Insurance Co. ("Columbian Mutual") | 03-03-17 | $ 2,800,000 | 294 North Main Street, East Longmeadow, MA | None – refinanced by MCREIF SubREIT, LLC ("MCREIF") |

---

[2]In commercial real estate loan transactions, lenders frequently require the landlord to provide tenant estoppel certificates and SNDAs for their tenants. A tenant estoppel certificate verifies the terms of a lease agreement between a landlord and a tenant. A SNDA provides certain protections for the tenant and the lender if the landlord/borrower defaults on the loan.

2
Initialed by Christine Gendron _Cg_

| Lender | Date | Loan | Collateral | Actual Loss |
|---|---|---|---|---|
| Freedom Credit Union ("FCU") | 03-06-17 | $ 6,250,000 | 113-115 State Street, Springfield, MA<br><br>1139-1155 Main Street, Springfield, MA<br>21 Stockbridge Street, Springfield, MA | $ 5,370,037 |
| NYIP (LOU-17-002) | 06-27-17 | $ 200,000 | Masaschi's and Norman's membership interests in 50 West End, LLC; 21 Stockbridge, LLC; and 109 Hill Crest Ave, LLC | $ 530,058 |
| Northmarq (Broker) | 06-26-17 (attempt) | $ 2,200,000 | 79-89 Enfield Street, Enfield, CT | None - attempt |
| NYIP (LOU-17-003) | 10-03-17 | $ 2,826,000 | Assignments of leases for 115 State Street, Springfield, MA; 1139-1155 Main Street, Springfield, MA; and other properties | $ 3,647,352 |
| U.S. Income Partners, LLC ("USIP") LOU-17-005 | 01-26-18 | $ 325,000 | Assignments of leases for 34 Sumner Avenue, Springfield, MA and 79 Enfield Street, Enfield, CT | $ 793,822 |
| Community Loan Servicing, LLC d/b/a Silver Hill Funding, LLC ("SHF") | 02-14-18 | $ 231,000 | 7-9 Stockbridge Street, Springfield, MA | $ 255,112 |
| SHF | 02-27-18 | $ 1,050,000 | 760 Sumner Avenue, Springfield, MA | $ 1,068,434 |
| FCU | 03-09-18 | $ 400,000 | 939-941 Columbus Avenue, Springfield, MA | None – attempt |
| Grand Coast Capital Fund I, LLC ("Grand Coast") | 05-11-18 | $ 350,000 | 939-941 Columbus Avenue, Springfield, MA [60 Shaker Road, East Longmeadow, MA] [30-34 Shaker Road, East Longmeadow, MA] | $ 300,115 |

3
Initialed by Christine Gendron  *CG*

| Lender | Date | Loan | Collateral | Actual Loss |
|---|---|---|---|---|
| Grand Coast | 05-16-18 | $ 765,000 | 939-941 Columbus Avenue, Springfield, MA 60 Shaker Road, East Longmeadow, MA 30-34 Shaker Road, East Longmeadow, MA | $ 778,182 |
| Berkshire Bank, d/b/a Savings Institute Bank & Trust ("SIBT") | 05-31-18 | $11,000,000 (attempt only) | 167-175 Dwight Street, Longmeadow, MA | None – application declined. |
| SIBT | 05-31-18 | $ 3,000,000 (attempt only) | 249 North Main Street, East Longmeadow, MA | None – application declined. |
| Grand Coast | 06-29-18 | $ 875,000 | 79 Enfield Realty, LLC | $ 561,005 |
| MCREIF SubREIT, LLC, d/b/a Money360 ("MCREIF") | 08-28-18 | $ 4,200,000 | 249 North Main Street, East Longmeadow, MA | $ 1,734,305 |
| AMUSA Commercial Capital ("AMUSA") | 10-17-18 | $ 960,000 (attempt only) | 79 Enfield Street, Enfield, CT | None – no loan issued. |
| Workers Credit Union ("WCU") | 11-01-18 | $11,500,000 | 167-175 Dwight Street, Longmeadow, MA | $ 2,043,444 |
| IP Capital Partners, LLC d/b/a Kore Capital, Ltd. ("IP Capital") | 02-13-19 | $ 6,700,000 (attempt only) | 294 North Main Street, East Longmeadow, MA | None - no loan issued. |
| **Total Actual Loss:** | | | | $19,305,473 |
| **Total Attempted Loss:** | | $60,123,000 | | |

4
Initialed by Christine Gendron _Cg_